IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
CASE NO. _____

R. DALE GODFREY, ADMINISTRATOR )
OF THE ESTATE OF CHRISTINA LYNN )
STANFORD, Deceased, )
)
         Plaintiff, )
v. ) **COMPLAINT**
)
UNITED STATES OF AMERICA, )
)
         Defendant )

## I. PRELIMINARY STATEMENT

1. This action arises under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2401(b), and 2671-80, based on the negligence of government employees at First Choice Community Health Centers, Mamers, North Carolina, which proximately resulted in the death of Christina Lynn Stanford on April 6, 2013.

## II. JURISDICTION

2. Jurisdiction for this action under the Federal Tort Claims Act, 28 U.S.C. §§ 2671-80 is based on 28 U.S.C. §1346(b).

## III. THE PARTIES

3. When the acts that give rise to this action transpired, Mrs. Stanford was a resident of Johnston County, North Carolina, and a citizen of the United States. This action is brought by Mrs. Stanford's estate, by and through its administrator, R. Dale Godfrey, who is a citizen and resident of Robeson County, North Carolina.

## IV. EXHAUSTION OF ADMINISTRATIVE REMEDIES

4. Pursuant to 28 U.S.C. § 2401 (b), the claims set forth herein were timely presented on March 31, 2015, to the Department of Health and Human Services. The agency denied the claims on October 11, 2017.

5. At all times relevant hereto, the healthcare providers who provided care and treatment for Mrs. Stanford were the lawful employees of the defendant, United States of America. During all times mentioned in this complaint, these healthcare providers were acting within the lawful scope and course of their employment with the defendant, United States of America.

V. COMPLIANCE WITH NORTH CAROLINA PROCEDURAL REQUIREMENTS

6. Although plaintiff submits that N.C. Rule Civ. Pro. 9(j) does not apply in this federal action, plaintiff objects to the pre-filing requirements of N.C. Rule Civ. Pro. 9(j) as unconstitutional. Rule 9(j) effectively requires plaintiffs to prove their case before factual discovery is even begun, and it denies medical malpractice plaintiffs their rights of due process of law, equal protection under the law, and the right to open courts in violation of the United States and North Carolina constitutions. Rule 9(j) is an unconstitutional violation of the Seventh and Fourteenth Amendments of the United States Constitution and Article I, sections 6, 18, 19, and 32 and Article IV, sections 1 and 13 of the North Carolina Constitution. Without waiving these objections, counsel for plaintiff provides the following information to comply with the requirements of Rule 9(j): the medical care and all medical records pertaining to the alleged negligence that are available to the plaintiff after reasonable inquiry have been reviewed by a person who is reasonably expected to qualify as an expert witness under Rule 702 of the North Carolina

Rules of Evidence or whom plaintiff will seek to have qualified as an expert witness under that rule, and who is willing to testify that the medical care rendered by defendant, as described in this complaint, did not comply with the applicable standard of care. In addition, should a court later determine that the person who has reviewed the medical care provided by defendant does not meet the requirements of Rule 702(b) or 702(c) of the N.C. Rules of Evidence, then plaintiff will seek to have such person qualified as an expert witness by motion under Rule 702(e) of the N.C. Rules of Evidence, and plaintiff moves the court pursuant to Rule 9(j) of the N.C. Rules of Civil Procedure that such person be qualified as an expert witness under Rule 702(e) of the N.C. Rules of Evidence. Plaintiff does not waive his objections on the grounds stated to the pre-filing certification requirements of Rule 9(j) by providing this certification and making this motion, and he specifically preserves objections to any discovery related to Rule 9(j).

## VI. STATEMENT OF THE FACTS

6. Mrs. Stanford's husband, Todd Stanford, took her to the Angier, North Carolina, location of First Choice Community Health Centers on April 5, 2013, because she had been having head and chest symptoms, coughing, congestion, difficulty breathing, nausea, and vomiting.

7. She was seen by Stephanie Elbel, PA-C, with documented complaints of wheezing; feeling she could not take a deep breath for the previous three days; a runny nose and sore throat for a day, which had resolved; fever two days before; no history of using inhalers; no history of seasonal allergies; sneezing and itching/watering eyes; and no history of smoking.

3

8. Ms. Elbel administered a nebulizer treatment and documented that Mrs. Stanford felt it helped a little.

9. Ms. Elbel's treatment plan was noted as: "Injection–Methylprednisone Acetate--80 mg[;] prednisone 20 mg tablet. 3 tabs po on Days 1-3, then 2 tabs po on Days 4-7. Dispense: 17. Refill: 0[;] albuterol sulfate 90 mg/actuation HFA Aerosol Inhaler. 2 puffs every 4-6 hours as needed for shortness of breath. Dispense: 1. Refill: 0."

10. Ms. Elbel assessed Mrs. Stanford's condition as "wheezing" and noted: "Unsure why she has wheezing with no history of asthma or allergies but will treat with prednisone. Instructed her to go to the ED over weekend if symptoms worsen, and to call Monday if she's not starting to feel better."

11. Mrs. Stanford was discharged after about an hour at the clinic.

12. Her husband, when told by Mrs. Stanford that she had received a shot and prescriptions, said she might have pneumonia, as he had received a shot and prescriptions the previous year when he had been diagnosed with pneumonia. She replied that nothing had been said during her treatment about having pneumonia.

13. Mr. and Mrs. Stanford returned home, and Mrs. Stanford laid down to rest and allow the prednisone to take effect. Mr. Stanford gave her a bell to ring to summon him when she needed anything while he watched their 6-year-old son in another room.

14. Mrs. Stanford rang the bell several times for water and milk, which he brought her, and Mr. Stanford also checked on her several times.

4

15. The last time he checked, she was not breathing, was unresponsive when he talked to her and shook her, and did not have a pulse that he could find.

16. Mr. Stanford began administering chest compressions and called 911. EMT responders took over her care and transported her by ambulance to the emergency department at WakeMed in Raleigh, North Carolina.

17. The hospital's records document that Mrs. Stanford arrived after cardiac arrest, her eyes were fixed and dilated, she had decreased lung sounds on the left, her extremities were cyanotic, her skin was mottled, she had a Glasgow Coma Scale score of 3, and she had prominent pleural thickening on the left and a large left pleural collection that was suspicious for empyema (a collection of pus in the pleural cavity caused by microorganisms), based on a chest X-ray at the hospital.

18. Attempts to resuscitate Mrs. Stanford were unsuccessful, and she was pronounced dead at 3:23 a.m. on April 6.

19. The attending physician documented that her impression was "Large empyema due to staph/strep."

20. On the Certificate of Death, Ms. Elbel documented the cause of death as septic shock due to (or as a consequence of) tension empyema due to (or as a consequence of) pneumonia.

21. Upon information and belief, at all times relevant to this action, the healthcare providers seen by Mrs. Stanford at First Choice Community Health Centers were duly registered and licensed to provide medical care and held themselves out to their patients as being professionally qualified to render medical services to an ill patient

such as Mrs. Stanford. Upon information and belief, those healthcare providers, who included but were not limited to Stephanie Elbel, PA-C, were employed at First Choice Community Health Centers by the defendant, United States of America, and all of their actions were within the lawful scope and course of their employment by the defendant

22. During Mrs. Stanford's illness, proper assessment of her in accordance with the accepted standard of care would have prevented the injuries suffered by Mrs. Stanford that caused her wrongful death.

23. During Mrs. Stanford's illness, each of defendant's employees who was involved with her treatment had a duty to provide medical treatment and care in accordance with the standards of practice among members of the same health care profession with similar training and experience situated in the same or similar communities at that time.

24. During Mrs. Stanford's illness, defendant United States of America, by and through its agents, servants, and employees at First Choice Community Health Centers, was negligent in that those agents, servants, and employees:

   a. did not conduct an adequate physical examination in light of the history, signs, and symptoms Mrs. Stanford had;

   b. did not order studies that were indicated by the history, signs, and symptoms Mrs. Stanford had;

   c. did not make a proper differential diagnosis to consider the likely conditions that Mrs. Stanford had;

6

d. did not use proper diagnostic techniques and procedures during the evaluation of Mrs. Stanford and, as a result, failed to diagnose and treat her pneumonia and related conditions;

   e. did not use their best judgment in the treatment and care of Mrs. Stanford, did not use reasonable care and diligence in the application of their knowledge and skill to her care, and did not provide health care in accordance with the standards of practice among members of the same health care professions with similar training and experience situated in the same or similar communities at the time when the health care was rendered;

   f. did not provide care in compliance with the standards required by North Carolina law; and

   g. were otherwise negligent and failed to comply with the standards of practice required of them as may be determined from additional facts.

25. As a direct and proximate result of this conduct, which was negligent, grossly negligent, or in reckless disregard of the rights of others, Mrs. Stanford died.

26. Defendant United States of America is liable to plaintiff for the negligence, gross negligence, or recklessness of its agents, servants, and employees while providing care and treatment to Mrs. Stanford. If defendant United States of America were a private person, it would be liable to plaintiff in accordance with the laws of the State of North Carolina.

27. Plaintiff, as administrator of Mrs. Stanford's estate, has been damaged and is entitled to recover compensatory damages from defendants pursuant to North Carolina General Statute § 28A-18-2. These compensatory damages include, but are not limited to, compensation for Mrs. Stanford's pain and suffering, expenses for care and treatment incident to the injuries resulting in her death, reasonable funeral expenses, the loss of the monetary value of Mrs. Stanford to her husband and surviving child, including compensation for the loss of the reasonably expected net income of Mrs. Stanford, and for the loss of her services, protection, care and assistance, society, companionship, comfort, guidance, kindly offices, and advice to her husband and child.

WHEREFORE, plaintiff prays:

1. That the court enter judgment for plaintiff and against defendant in the amount of $3,000.000.00, as demanded in the original administrative Federal Tort Claim;

2. That costs including interest as provided by law be taxed to defendant;

3. That the court grant such other and further relief as the court deems just and proper.

RESPECTFULLY SUBMITTED, this, the 1st day of March, 2018.

BY: /s/ Mark A. Sternlicht
Attorney for Plaintiff
Beaver Courie Sternlicht Hearp & Broadfoot, P.A.
Email: mas@beavercourie.com
230 Green Street, PO Drawer 2275
Fayetteville, North Carolina 28302
Telephone: (910) 323-4600
Facsimile: (910) 323-3403
N.C. State Bar No. 8519

/s/Woodberry Bowen
Attorney for Plaintiff
Bowen & Berry, PLLC
Email: woodybowen@earthlink.net
433 N. Elm Street
Lumberton, NC 28358
Telephone: (910) 739-4357
Facsimile: (910) 739-0140
N.C. State Bar No. 6042

9

Case 7:18-cv-00035-H   Document 1   Filed 03/01/18   Page 9 of 9